**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:16-cv-25237-GOODMAN**

ROBERT STRICKLAND, *et al*.,
on behalf of themselves and all
others similarly situated,

       Plaintiffs,

v.

CARRINGTON MORTGAGE SERVICES, LLC,
*et al*.,

       Defendants.

_____/

**PLAINTIFFS' MOTION FOR PRELIMINARY**
**APPROVAL OF FAY CLASS ACTION SETTLEMENT AND**
**FOR CERTIFICATION OF THE SETTLEMENT CLASS**

Plaintiffs are proud to announce that in light of the various legal and factual obstacles raised in this litigation that are well known to this Court, the Parties have been able to reach a proposed, amicable national resolution of this matter and hereby respectfully move for preliminary approval of a settlement that would provide significant monetary relief to mortgagors nationwide who had insurance coverage "force placed" on their properties by Fay Servicing, LLC ("Fay"), in conjunction with its force-placed insurance providers American Modern Insurance Group, Inc., The Atlas Insurance Agency, Inc., Midwest Enterprises, Inc., American Modern Home Insurance Company, American Family Home Insurance Company, American Western Home Insurance Company, American Modern Surplus Lines Insurance Company, American Southern Home Insurance Company, American Modern Insurance Company of Florida, Inc., American Modern Select Insurance Company, and American Modern Lloyds Insurance Company (individually and collectively, "AMIG Defendants"); and Defendant Southwest Business Corporation ("SWBC") (together, Fay, AMIG Defendants, and SWBC are referred to as "Defendants"), as well as injunctive relief that would effectively end the force-placed insurance ("FPI") practices alleged in this case.  Fifteen similar FPI class action settlements have already been granted preliminary approval in this district and Plaintiffs respectfully request that this Court do the same under these particular facts.[1]

Under the settlement, Defendants will pay cash refunds of 10.5% as explained below, of the total net premium to class members who paid the amounts charged them, and 8% of the same amount to class members who were charged for FPI, but never made payments.  This settlement follows substantially similar FPI settlements that this Court has already approved, including those in *Saccoccio v. JPMorgan Chase Bank, N.A.*, No. 13-cv-21107, *Fladell v. Wells Fargo*

---

[1] In accordance with Local Rule 7.1(a)(3) and to expedite a ruling on this matter, Plaintiffs represent that all of the Parties agree to entry of this Motion.

*Bank, N.A.*, No. 13-cv-60721, *Diaz v. HSBC Bank (USA), N.A.*, No. 13-cv-21104, *Hamilton v. SunTrust Mortgage, Inc.*, No. 13-cv-60749, *Hall v. Bank of America, N.A.*, No. 12-cv-22700, *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233, *Braynen v. Nationstar Mortgage LLC*, No. 14-cv-20726, *Lee v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649, *Montoya v. PNC Bank*, No. 14-cv20474, and *Wilson v. EverBank*, No. 14-cv22264.

The settlement's benefits were the result of hard-fought, arm's-length negotiations between the parties and their counsel under the direction of an experienced mediator, Nancy Lesser. Undersigned counsel were well-positioned to evaluate and negotiate this settlement because they have been investigating lenders' FPI practices since November 2010 and their investigation and the litigation that followed involved a review of millions of documents and dozens of depositions. Despite that work, Plaintiffs and the Settlement Class faced significant hurdles in litigating their claims to resolution. As such, and given the immediate and substantial benefits the settlement will provide, there is no question that the settlement is "within the range of reasonableness" and warrants preliminary approval.

## FACTUAL BACKGROUND

### 1.   Defendants' FPI Practices

The standard form mortgage agreements for loans serviced by Fay require the borrower to maintain insurance on the property securing his or her mortgage loan, and provide that the lender or servicer may force new coverage on the property at the borrower's expense in the event of a lapse. (D.E. 46 ¶¶ 44, 45.) The mortgage agreement authorizes the lender to obtain coverage to protect itself against risk of loss, and either advises the borrower that the cost of the coverage might significantly exceed that of the borrower's voluntary coverage or provides that the lender may pay costs necessary to protect its rights in the property.

2.      **The Litigation**

On May 12, 2016, Plaintiffs Latasha Jackson and Barbra Bowles ("Settling Plaintiffs")
filed a putative nationwide class action complaint in the United States District Court for the
District of New Jersey, captioned *Bowles, et al. v. Fay Servicing, LLC, et al.*, No. 2:16-cv-02714-
CCC-JBC ("Bowles Litigation"), alleging that the defendants improperly benefited from the
procurement and issuance of Lender-Placed Insurance ("LPI," as defined below).  The complaint
in the Bowles Litigation asserted claims against Fay, American Modern Home Insurance
Company, and SWBC for breach of contract, breach of the implied covenant of good faith and
fair dealing, unjust enrichment, tortious interference with a business relationship, violations of
the New Jersey Consumer Fraud Act, violation of the Truth in Lending Act, violations of the
Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Section 1962(c),
and conspiracy in violation of RICO, Section 1962(d).

On September 19, 2016, a mediation of the Bowles Litigation was held before nationally
recognized mediator, Nancy Lesser.  In advance of and/or during, and in connection with the
mediation in the Bowles Litigation and discussions between Class Counsel and the AMIG
Defendants relating to settlement of all acts, omissions, and practices in connection with Fay's
lender-placed insurance program ("Fay LPI program"), one or more of the Defendants provided
Class Counsel with information concerning the Fay LPI program, including aggregate
nationwide LPI premium data.  Significant progress towards a complete settlement agreement
was made by the parties in the Bowles Litigation during that mediation.

On December 9, 2016, during a second mediation, as well as negotiations among the
parties leading up to it, Settling Plaintiffs Bowles and Jackson reached an agreement in principle
on the terms of a nationwide class settlement of claims against AMIG Defendants, which

3

contemplated refiling Settling Plaintiffs' claims in this Litigation.  Subsequent to that mediation, Fay and SWBC also joined the agreement in principle on the terms of a nationwide class settlement of the same claims or potential claims by Settling Plaintiffs against them.

On December 18, 2016, Settling Plaintiff Jackson and others filed a putative nationwide class action complaint in the Strickland Litigation against Fay, SWBC, American Modern Home Insurance Company, and American Western Home Insurance Company, among others, alleging that defendants improperly benefited from the procurement and issuance of LPI and asserting claims on behalf of three separate nationwide classes.  Settling Plaintiff Jackson alleged claims on behalf of a nationwide class of Fay borrowers against Fay, American Modern Home Insurance Company, and SWBC for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, tortious interference with a business relationship, violations of Florida's Deceptive and Unfair Trade Practices Act, violations of the Truth in Lending Act, and violations of RICO against one or more of the Defendants.

On March 21, 2017, Class Counsel and Settling Plaintiffs and others filed an amended complaint in this Litigation adding Barbra Bowles as a party plaintiff, and adding American Modern Insurance Group, Inc., The Atlas Insurance Agency, Inc., Midwest Enterprises, Inc., American Family Home Insurance Company, American Modern Surplus Lines Insurance Company, American Southern Home Insurance Company, American Modern Insurance Company of Florida, Inc., American Modern Select Insurance Company, and American Modern Lloyds Insurance Company ("New Defendants") as party defendants, solely for the purposes of implementing the Settlement.  In connection with this Settlement, Settling Plaintiffs Barbra Bowles and Latasha Jackson also filed a notice of voluntary dismissal without prejudice of their claims in the Bowles Litigation.

4

The Parties announced their nationwide settlement of all claims to the Court on April 7, 2017, and moved to stay litigation of Plaintiffs' claims pending settlement approval.  (D.E. 48.) The parties subsequently finalized and executed a settlement agreement.   A copy of the Settlement Agreement is attached as **Exhibit A**.[2]

3.     **The Settlement Terms and Agreement**

A.  *The Proposed Settlement Class*

The Settlement Agreement provides relief to "all borrowers in the United States who, from January 1, 2009 to the date of entry of the Preliminary Approval Order ("Settlement Class Period"), inclusive of those dates, were charged by Fay for a hazard, flood, flood-gap, or wind-only LPI Policy for Residential Property issued by AMIG Defendants and procured by SWBC during the Settlement Class Period and who either (i) paid to Fay all or part of the Net Premium for that LPI Policy, or (ii) were charged but did not pay and still owe to Fay the Net Premium for that LPI Policy."   (Ex. A ¶¶ 3.1, 3.2).  This class will include borrowers whose homes are in foreclosure and short sale, and those granted a deed in lieu of foreclosure or loan modifications.[3]

B.  *Monetary and Injunctive Relief*

The Settlement Agreement affords members of the Settlement Class significant monetary and injunctive relief.  (*Id.* ¶ 4.)  The monetary relief will compensate class members for a significant part of the allegedly inflated portion of the amounts that they either paid or were charged for force-placed coverage.  All Settlement Class members who were charged for FPI and

---

[2] The following documents are attached to the Settlement Agreement as exhibits: Preliminary Approval Order (**Exhibit A**); Mail Notice (**Exhibit B**); Claim Form (**Exhibit C**); Claim Form Instructions (**Exhibit D**); Publication Notice (**Exhibit E**); and Judgment (**Exhibit F**).

[3] By contrast, the court in *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233 (S.D. Fla.), specifically excluded certain categories that are included in this settlement from the Florida class it certified in February 2012. *Williams*, No. 11-cv-21233 (S.D. Fla. Feb. 21, 2012) (D.E. 211).

10K0528

submit a valid claim form will recover 10.5% or 8% of the net premium *charged* to them during the class period based upon whether the borrower ever paid any amounts towards the lender placed insurance. (*Id.* ¶¶ 4.7.2., 4.7.3.)  The percentage payment is taken from the entire premium, rather than the alleged "excess" or inflated portion of the premium, since a considerable portion of the premiums charged, in fact, were applied to pay for coverage. Qualified members will receive a check for the full settlement amount.  (*Id.*)

The injunctive relief provided by the Settlement Agreement will put an end to the alleged FPI practices that are the subject of this lawsuit.  The Settlement Agreement enjoins the AMIG Defendants from engaging in the alleged unlawful conduct that is the subject of the complaint. For a period of five years following 120 days after the Effective Date, *inter alia*, AMIG is prohibited from paying commissions to Fay as a result of the placement of an FPI policy; entering into quota-share reinsurance arrangements with Fay; pay Fay for any administrative or other service associated with LPI or other LPI-related services; and accept payments from Fay for below-cost or free outsourced services provided by the AMIG Defendants to Fay in connection with LPI.  (*Id.* ¶ 4.3.1.)  Similarly, Fay and SWBC must continue to follow applicable state or federal statutes, regulations, rules, or orders related to the placement of LPI Policies on Residential Property.

### C.  *Release of Claims against Defendants*

In exchange for the relief provided by the Settlement, members of the Settlement Class will release the Defendants, as well as all other entities included in the definition of "Released Persons" set forth in the Settlement Agreement (*Id.* ¶ 2.43.), from "all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever," that

6

"were or could have been sought or alleged in the Strickland Litigation or the Bowles Litigation that relate, concern, arise from, or pertain in any way to the Released Persons' conduct, policies, or practices concerning Fay's placement or AMIG Defendants' or SWBC's issuance of LPI Policies, or disclosure or nondisclosure of charges related to the advancing of LPI premiums during the Settlement Class Period, allegedly inflated premiums charged by Defendants for LPI, alleged 'kickbacks' Fay received or AMIG Defendants or SWBC paid in connection with the Fay LPI program (including but not limited to alleged no or low-cost loan monitoring services), including but not limited to acts, omissions, policies or practices concerning LPI Policies or charges for placement of LPI Policies under the Fay LPI program during the Settlement Class Period." (*Id.* ¶ 10.1)

### D. *Class Notice*

Settlement Class members will receive notice of the settlement, a claim form, and instructions by first-class mail at their last-known mailing address in the forms attached to the Settlement Agreement as Exhibits B, C, and D, respectively, assuming they are approved by the Court. (*Id.* ¶ 6.1). The Mail Notice shall also include a Spanish-language translation of the Mail Notice, Claim Form Instructions, and Claim Form, to be mailed to all Fay Settlement Class Members together with the English language version. (*Id.*) The notice will be mailed no fewer than 90 days before the date set for the final approval hearing. (*Id.*). The Settlement Administrator shall perform a search of the National Change of Address database for each mailing address attached to a notice that is returned as undeliverable. (*Id.* ¶ 6.1.1). The Settlement Administrator will also establish a website on which Settlement Class members may download and print or e-sign and upload a claim form and review the Settlement Agreement and its exhibits. (*Id.* ¶ 6.2.). A notice of the settlement will be published in *USA Today* not less than

7

10K0528

sixty days before the date set by the Court for the Final Approval Hearing.  (*Id.* ¶ 6.3.)  The Settlement Administrator will also advertise the settlement on the internet.  (*Id*. ¶ 6.4) The notice will provide a toll-free number to call for settlement information.   (*Id.* ¶¶ 6.1, 6.3, 6.5 & Exs.).  Members may opt out or object by following the prescribed process.  (*Id.*  ¶¶ 11, 12.)

   E.  *Claims Process*

   To obtain relief from Defendants, Settlement Class members will be required to submit the claim form on or before a deadline that will be 60 days after the Final Approval Hearing.  (*Id.* ¶¶ 2.10, 7.1).  The claims will be reviewed and approved by the Settlement Administrator, who will then make a determination of the amount owed each class member using Defendants' electronic records. (*Id.* ¶¶ 7.3, 7.4).  The Settlement Administrator will advise Class Counsel on a weekly basis of any claims deemed invalid before those claims are denied so that Class Counsel may follow up with the borrower to cure any deficiency in his or her submission. (*Id.* ¶ 7.3.1). The Settlement administrator will also send notices to any class members submitting deficient forms advising them of the deficiency. (*Id.*). Class members will have up to 30 days after the claims deadline to cure any defective or incomplete claim forms.  (*Id.*). The parties agree to attempt to resolve any disputes related to the denial of class member claims in good faith. Within sixty days of the Claim Deadline, the Settlement Administrator will provide Class Counsel and Defendant with, *inter alia*, a list of claims that are accepted and the amount of the relief to be paid to the Claimant. (*Id.* ¶ 7.4.1).  The Settlement Administrator shall then distribute the monetary relief provided for by the Settlement within the later of: a) thirty days after such list is finalized following a claims audit, or b) the Effective Date. (*Id.* ¶ 7.4.3).

   F.  *Class Counsel Fees and Expenses and Named Plaintiffs' Case Contribution Award*
   The Parties stipulate in the Settlement Agreement that the law firms of Kozyak Tropin & Throckmorton, LLP, Podhurst Orseck, P.A., and Harke Clasby & Bushman, LLP will serve as

Class Counsel.  (*Id.* ¶ 2.14).  Class Counsel's application for attorneys' fees and expenses for all of the various law firms involved shall not exceed $375,000.  (*Id.* ¶ 14.1.)  Defendants will also pay the named Plaintiffs service awards approved by the Court not to exceed $5,000.00 each. (*Id.* ¶ 14.6.)  The Court will consider whether to approve these awards separate and apart from its analysis of the fairness, reasonableness, and adequacy of the settlement.  (*Id.* ¶ 14.7.)

### G.      Final Approval and Objections

Class members may object to the settlement no later than 30 days prior to the Final Approval Hearing, or as the Court may otherwise direct.  (*Id.* ¶ 2.34.)  The Motion for Attorneys' Fees shall be filed 45 days prior to the Final Approval Hearing (*id.* ¶ 3.4.6) and the Parties shall respond to any objections within 10 days prior to the Final Approval Hearing.

## LEGAL ARGUMENT

### I.      THE COURT SHOULD ENTER AN ORDER GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT.

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length.  Settlements of complex cases contribute greatly to the efficient use of judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006).  For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits."  *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir.1992).   "Approval of a class action settlement is a two-step process." *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007).  Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.*  In the second step, after notice to the class and time and opportunity for

9

absent class members to object or otherwise be heard, the court considers whether to grant final

approval. *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).

The standard for preliminary approval of a class action settlement is not high—a

proposed settlement should be preliminarily approved if it falls "within the range of possible

approval" or if there is "probable cause" to notify the class of the proposed settlement and "to

hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp.

1379, 1384 (D. Md. 1983) (citation omitted). Applying this standard, this Court has granted

preliminary approval of settlements with similar facts in fifteen similar cases, eleven of which

have all now obtained final approval.[4]

### A. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations among Experienced Counsel.

At the preliminary approval stage, district courts consider whether the proposed

settlement appears to be "'the result of informed, good-faith, arms'-length negotiation between

the parties and their capable and experienced counsel' and not 'the result of collusion[.]'" *In re

Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011). The settlement

terms in this case are the product of significant give and take by the settling parties, and were

negotiated at arm's length. The parties participated in two intensive mediations with Nancy

Lesser, a well-respected mediator with significant experience resolving complex suits. Ms.

Lesser and the parties participated in a mediation sessions on September 19, 2016 and December

9, 2016, as well as subsequent negotiations by telephone and email. (Ex. A. ¶¶ 1.5, 1.7). The

---

[4] *See Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233; *Saccoccio v. JPMorgan Chase Bank, N.A.*, No. 13-cv-21107; *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721; *Diaz v. HSBC Bank (USA), N.A.*, No. 13-cv-21104; *Hamilton v. SunTrust Mortgage, Inc.*, No. 13-cv-60749; *Hall v. Bank of America, N.A.*, No. 12-cv-22700; *Braynen v. Nationstar Mortgage LLC*, No. 14-cv-20726; *Lee v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649; *Montoya v. PNC Bank*, No. 14-cv20474; *Wilson v. EverBank*, No. 14-cv22264; *Almanzar v. Select Portfolio Servicing, Inc.* No. 14-cv-22586; *Circeo-Loudon v. Green Tree Servicing LLC*, No. 14-cv-21384; *Jackson v. U.S. Bank, N.A.*, No. 14-cv-21252; and *Ziwczyn v. Regions Bank*, No. 15-cv-24558.

very fact of Ms. Lesser's involvement weighs in favor of preliminary approval.  *See, e.g., Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) (use of court-appointed special master to oversee mediation evidenced procedural fairness of negotiating process); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (that "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged" belied any suggestion of collusion); *Poertner v. The Gillette Co.,* 618 Fed. Appx. 624, 630 (11th Cir. 2015) (settlement achieved only after engaging in extensive arms-length negotiations moderated by an experienced mediator belies any suggestion of collusion).

The parties' extensive negotiations were also informed by considerable discovery Class Counsel conducted in other similar FPI cases.  Millions of pages of documents were produced in other FPI litigation and have been carefully reviewed by Class Counsel, and their co-counsel. *See, e.g., Fladell*, No. 13-cv-60721; *Hall,* No. 12-cv-22700; *Williams*, No. 11-cv-21233. Further, more than thirty depositions have been taken in those cases.  In advance of and during the mediation Defendants provided Plaintiffs and Class Counsel with additional information concerning Fay's specific FPI program. (Ex. A. ¶ 1.5).

**B.  The Settlement Falls Squarely within the Range of Reasonableness.**

As a result of this mediation process, the Settlement provides considerable monetary and injunctive relief to the Settlement Class, and falls well within the range of possible approval.

**1.  Monetary Relief**

The Settlement Agreement provides significant monetary benefits.  All Settlement Class members who paid, or were charged and did not pay, FPI charges are eligible to receive a check for 10.5% or 8% of the net premium charged.  (*Id*. ¶¶ 4.7.2; 4.7.3).  This percentage will be of

11

10K0528

the entire premium charged, *not* a percentage of the premium allegedly charged in excess of the actual or competitive cost of coverage.  (*Id.*)

Federal courts hold that settlements providing the class with a percentage of the recovery sought in litigation are reasonable in light of the attendant risks of litigation.  *See, e.g., Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534,  542-43 (S.D. Fla. 1988) (approving recovery of $.20 per share where desired recovery was $3.50 a share because "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the settlement is inadequate or unfair"); *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving settlement providing recovery of 0.2% of sales). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable[.]" *Johnson*, 2011 WL 4357376, at *12.

Plaintiffs and the Settlement Class faced significant hurdles in litigating their claims to resolution, including overcoming Defendants' filed-rate doctrine and other defenses.  Each class member stands to recover hundreds, if not thousands, of dollars as a result of the settlement.  The settlement's monetary recovery falls well within the range of reasonableness.

### 2.  Injunctive Relief

Once approved, the settlement will also enjoin the AMIG Defendants for five years from paying the "kickbacks" to Fay alleged in the complaint.  (Ex. A ¶¶ 4.2 - 4.4).  This means that Fay will not collect, and the AMIG Defendants will not pay, the FPI commissions alleged in the

Complaint.  (*Id.*).  Further, there will be no revenue arising from quota-share reinsurance arrangements, or receipt of illusory payments for administrative or other services associated with placement of FPI.  (*Id.*)  There can be no question that this result is reasonable.

### C. The Settlement Saves Plaintiffs and the Settlement Class from Considerable Litigation Hurdles.

Any evaluation of the settlement benefits must be tempered by the recognition that any compromise involves concessions by the parties.  Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Civil Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted).  Had litigation continued, Plaintiffs and Settlement Class members would have risked not prevailing on their claims.

### D. Class Counsel Believes the Settlement Is Reasonable.

Significant weight should be attributed to the belief of experienced counsel that the negotiated settlement is in the best interest of the class.  *See In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 666 (D. Minn. 1974) (recommendation of experienced counsel is entitled to great weight); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).  "The views of the parties to the settlement must … be considered."  Counsel here have litigated numerous FPI class actions over the course of almost five years, and fully support the settlement.  They certified the first FPI class in Florida in *Williams*, No. 11-cv-21233, and then settled that case; litigated the motion for class certification in *Kunzelmann*; briefed and argued five motions to centralize FPI litigation in nationwide MDLs; settled and received final approval of claims against Chase, HSBC, Wells Fargo, Bank of America, SunTrust, Nationstar, Ocwen, PNC, Select Portfolio Servicing, BB&T, Seterus, LoanCare, Regions Bank, Green Tree, and their force-placed insurers on behalf of nationwide

13

classes in *Saccoccio*, *Diaz*, *Fladell*, *Hall*, *Hamilton*, *Lee*, *Braynen*, *Montoya*, *Almanzar*, *Jackson*, *Circeo-Loudon*, *Ziwczyn*, *Edwards*, and *McNeil*. Based on this experience, and decades more with class action lawsuits, it is Class Counsel's informed opinion that, given the uncertainty and expense of pursuing these claims through trial, the settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

## II.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS.

"It is well established that a class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654,659 (S.D. Fla. 2011) (brackets in original). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class," save manageability, "since the settlement, if approved, would obviate the need for a trial." *Id.*

### A.  The Settlement Class Meets the Four Requirements of Rule 23(a).

The policies underlying the class action rule dictate that Rule 23(a) should be liberally construed.  *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).  Plaintiffs satisfy all four requirements of Rule 23 (a) as set forth below.

#### 1.  The Settlement Class Is Sufficiently Numerous.

Rule 23(a)(1) requires Plaintiffs to show that the proposed class is so numerous that joinder of all members would be impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  "While there is no fixed rule, generally a class size [of] less than twenty-one is inadequate, while a class size of more than forty is adequate." *Williams*, 280 F.R.D. 665, 671-72 (S.D. Fla. 2012) (citing *Cheney v. Cyberguard Corp.,* 213 F.R.D. 484,489-90 (S.D. Fla. 2003)); *see, e.g., Anderson v. Bank of S., N.A.*, 118 F.R.D. 136, 145 (M.D. Fla. 1987) ("[T]he size of the class and geographic location of

the would-be class members are relevant to any consideration of practicality."); *Checking Overdraft Litig.,* 275 F.R.D. at 671. The proposed class in this case, which includes thousands of borrowers, well exceeds the minimum threshold. *See Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986). The numerosity requirement is satisfied here.

**2.   Questions of Law and Fact Are Common to All Settlement Class Members.**

Rule 23(a)(2) requires class action plaintiffs to identify questions of law or fact common to the proposed class. *See* Fed. R. Civ. P. 23(a)(2).  "The threshold for commonality is not high." *Cheney,* 213 F.R.D. at 490.  Commonality requires a showing that the class members' claims "depend on a common contention" and that the class members have "suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  "[F]or purposes of Rule 23(a)(2), even a single [common] question will do[,]" *id.* at 2556 (brackets in original), and "where a common scheme of conduct has been alleged, the commonality requirement should be satisfied." *Checking Overdraft,* 275 F.R.D. at 673-74.

Plaintiffs' claims here depend on the common contention that Defendants conceived and implemented a scheme to manipulate the FPI market and ultimately charge borrowers more than what Fay paid for the cost of the insurance coverage.  All members of the putative class were injured in the same manner:  they were charged for FPI amounts that included allegedly inflated costs, and have paid or now owe amounts in excess of what their mortgage agreements allegedly allowed.  *See Williams,* 280 F.R.D. at 672 (finding commonality where "all members of the propose class were injured in the same manner, namely by being charged inflated premiums for the FPI").

Thus, while only one question of law *or* fact is required, many common questions capable of class-wide resolution arise here, including whether Defendants manipulated the

15

market to increase their own profits; whether Fay breached the contract and the implied covenant by *inter alia*, charging more than what it actually paid for the FPI; and whether AMIG and SWBC tortiously interfered with the mortgage contracts.  These issues satisfy commonality.  *See, e.g., id.* at 672 ("The determination of the truth or falsity of the Plaintiff's allegations that Wells Fargo and QBE engaged in a scheme to force-place insurance with inflated and excessive premiums will resolve an issue that is central to the validity of each one of the claims in one stroke.").

### 3.  Plaintiffs' Claims Are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires Plaintiffs to demonstrate that their claims are typical of those held by the proposed class.  *See* Fed. R. Civ. P. 23(a)(3).  Typicality and commonality are related, with commonality referring to "the group characteristics of the class as a whole" and typicality focusing on the named plaintiffs' claims in relation to the class.  *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 n.23 (S.D. Fla. 2004).  "Any atypicality or conflict between the named Plaintiff's claims and those of the class must be clear and must be such that the interests of the class are placed in significant jeopardy." *Cheney,* 213 F.R.D. at 491.

Plaintiffs' claims in this case arise from the same alleged course of conduct and are based on the same legal theories as those brought on behalf of the proposed class.  Plaintiffs and every class member had mortgage loans owned or serviced by Fay that were governed by allegedly common and materially uniform agreements.  As a result, once their voluntary policies lapsed, Plaintiffs and every other member of the proposed class were allegedly charged more for FPI coverage than what Fay actually paid.  Plaintiffs and the class seek redress through common claims for breach of contract, breach of the implied covenant, unjust enrichment, and tortious interference.

10K0528

### 4.  Plaintiffs and Their Counsel Are Adequate Representatives.

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement is satisfied when the class representatives have (1) no interests antagonistic to the rest of the class and (2) counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Cheney*, 213 F.R.D. at 495.  "Adequate representation is presumed in the absence of contrary evidence." *Association for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 464 (S.D. Fla. 2002).

### a.  Plaintiffs Do Not Have Interests Antagonistic to Settlement Class Members.

Adequacy exists where a class representative shares common interests with the class and seeks the same type of relief for himself and the settlement class members.  *See Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997); *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 600 (S.D. Fla. 1991).  Here, Plaintiffs have no interest antagonistic to those held by the Settlement Class.  The class definition includes only those who were subject to Defendants' alleged FPI scheme.  (Ex. A ¶ 3.1).  All class members had FPI forced on their homes and were charged allegedly inflated amounts for coverage.  (*Id.*) Thus, the critical issues in this case—the existence, implementation, and unlawfulness of Defendants' FPI scheme—are common issues. Plaintiffs and absent class members share a common goal: to recover the allegedly inflated portion of the amounts charged for FPI.  Plaintiffs have satisfied Rule 23(a)(4).  *See Williams*, 280 F. R. D. at 673-74.

### b.  Settlement Class Counsel Are Qualified and Experienced.

The attorneys who seek to represent the Settlement Class in this case are highly qualified to serve as class counsel, have been investigating FPI claims for more than five years, and have served as lead and co-lead counsel in some of the largest class actions in the country, as well as

10K0528

insurance-related complex cases.  The three law firms that Plaintiffs seek to name as Class Counsel in this action are Kozyak Tropin & Throckmorton, LLP, Podhurst Orseck, P.A., and Harke Clasby & Bushman, LLP.  These firms have successfully prosecuted consumer class actions and their law firms are well respected in the communities that they serve.

### B.  The Settlement Class Meets the Requirements of Rule 23(b)(3).

In addition to meeting the four requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one subsection of Rule 23(b).  *Cheney*, 213 F.R.D. at 489.  Plaintiffs here seek certification under Rule 23(b)(3), under which certification is appropriate if (1) common questions of law or fact predominate over those affecting only individual class members and (2) class treatment is superior to other adjudication methods.  *See* Fed. R. Civ. P. 23(b)(3).  The latter question implicates manageability concerns, which do not bear on certification of a settlement class. *See Checking Account Overdraft Litig.*, 275 F.R.D. at 659.

Here, "irrespective of the individual issues which may arise, the focus of the litigation concerns the alleged common course of unfair conduct embodied in [Defendants'] scheme to" manipulate FPI charges to the proposed class.  *Id*. at 676.  Proof of the scheme may be made by evidence that would remain the same regardless of class size or composition.  Common issues would predominate over any individual issue.

Moreover, a comprehensive resolution of the Settlement Class members' claims in this action would be far superior to litigating each of their claims separately.  "Since the damage amounts allegedly owed to each individual [borrower] are relatively low—especially as compared to the costs of prosecuting the types of claims in this case involving complex, multi-level business transactions between sophisticated defendants—the economic reality is that many

10K0528

of the class members would never be able to prosecute their claims through individual lawsuits." *Williams*, 280 F.R.D. at 675.  Accordingly, the Court should certify the proposed class.

## III.    THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE.

Federal Rule of Civil Procedure 23(e)(1) provides that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Class notice should be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The parties' proposed notice plan readily meets this standard.  The Settlement Agreement provides that the Settlement Administrator shall distribute class notice and claim forms by first-class mail in the form attached as exhibits B, C, and D to the Settlement Agreement to all identifiable class members no fewer than 90 days before the Final Approval Hearing.  (Ex. A ¶ 6.1).  The Settlement also provides for an internet website, publication notice, internet advertising, and a toll-free number through which Settlement Class members can acquire information, and allows class members to submit claims online. (*Id.* ¶¶ 6.2, 6.3, 6.4, 6.5 & Exs.).

The notice itself also satisfies the requirements of the Federal Rules.  It provides, among other things, a clear definition of the Class; a description of the underlying lawsuit and the material terms of the Settlement; instructions as to how Settlement Class members may make a claim and determine whether they are eligible to do so; an explanation of objection and opt-out rights and a date by which Settlement Class members may opt out, and information regarding how to do so; instructions as to how to object to the Settlement and an objection deadline; the date on which the Court will hold a Final Approval Hearing; and the internet address and toll-free number from which class members may obtain additional information about the Settlement and its

10K0528

terms.  (*Id.* at Exs. B, E.)  The claim form and instructions also provide clear and comprehensive instructions as to who is eligible for relief and how to make a claim. (*Id.* at Ex. D.)

**IV.    THE COURT SHOULD APPOINT THE UNDERSIGNED FIRMS AS CLASS COUNSEL.**

The parties have defined Class Counsel to include the three undersigned law firms. (Ex. A ¶ 2.15).   Plaintiffs and the undersigned now move the Court to appoint these three firms as Settlement Class Counsel, as it has done finally in eleven other FPI actions.   Undersigned counsel have significant experience litigating these cases, having represented plaintiffs in actions against over twenty major mortgage lenders and multiple other major force-placed insurers that issue force-placed coverage.

**V.  THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.**

Should the Court grant this Motion, Plaintiffs will file his motion for final approval of the settlement on a date set by the Court. Plaintiffs request that the Court schedule the Final Approval Hearing no less than 150 days after entry of the order preliminarily approving the settlement. Class Counsel will file their fee application at least fifteen days prior to any objection or opt-out deadline.

## CONCLUSION

The Court should enter an order granting preliminary approval of the settlement.

10K0528

Respectfully submitted this 4th day of May, 2017.

By: /s/ Adam M. Moskowitz

| | |
|---|---|
| Adam M. Moskowitz, Esq.<br>Florida Bar No. 984280<br>amm@kttlaw.com<br>Thomas A. Tucker Ronzetti, Esq.<br>Florida Bar No. 965723<br>tr@kttlaw.com<br>Rachel Sullivan, Esq.<br>Florida Bar No. 815640<br>rs@kttlaw.com<br>Robert J. Neary, Esq.<br>Florida Bar No. 81712<br>rn@kttlaw.com<br>**KOZYAK TROPIN &**<br>**THROCKMORTON LLP**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, FL 33134<br>Telephone:  (305) 372-1800<br>Facsimile:   (305) 372-3508<br>*Counsel for Plaintiffs* | Lance A. Harke, Esq.<br>Florida Bar No. 863599<br>lharke@harkeclasby.com<br>Sarah Engel, Esq.<br>Florida Bar No. 991030<br>sengel@harkeclasby.com<br>Howard M. Bushman, Esq.<br>Florida Bar No. 0364230<br>hbushman@harkeclasby.com<br>**HARKE CLASBY & BUSHMAN LLP**<br>9699 NE Second Avenue<br>Miami Shores, Florida 33138<br>Telephone:      (305) 536-8220<br>Facsimile:      (305) 536-8229<br>*Counsel for Plaintiffs* |
| Aaron S. Podhurst, Esq.<br>Florida Bar No. 63606<br>apodhurst@podhurst.com<br>Peter Prieto, Esq.<br>Florida Bar No. 501492<br>pprieto@podhurst.com<br>Matthew Weinshall<br>Florida Bar No. 84783<br>mweinshall@podhurst.com<br>**PODHURST ORSECK, P.A.**<br>SunTrust International Center<br>One S.E. 3rd Ave., Suite 2700<br>Miami, Florida 33131<br>Telephone: 305-358-2800<br>Facsimile: 305-358-2382<br>*Counsel for Plaintiffs* | |

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on

the 4th day of May, 2017 and served by the same means on all counsel of record.

By:  <u>/s/ Adam M. Moskowitz</u>

10K0528